UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

DANIEL KANG, )
)
    Plaintiff, )
)
v. ) CV421-111
)
THE MAYOR AND ALDERMEN )
OF THE CITY OF SAVANNAH )
and ROY W. MINTER, JR., )
)
    Defendants. )

## ORDER

Plaintiff Daniel Kang moves to exclude expert testimony from Defendant Roy Minter's expert, Louis M. Dekmar. Doc. 102. Defendant Minter has responded to Plaintiff's motion. Doc. 114. Defendant Minter moves to exclude certain opinions from Plaintiff's experts, Richard Register and Gary Vowell. Doc. 101. Plaintiff has responded to Defendant Minter's motion, doc. 113, and Defendant Minter has filed a reply, doc. 117. Both motions are ripe for disposition.

**I.  BACKGROUND**

Plaintiff is a former police officer with the Savannah Police Department. *See* doc. 35 at 2. He alleges that he was wrongfully terminated after signing a group complaint and filing his own complaint

1

against Defendant Minter, the Chief of Police, and that the process governing the disciplinary proceedings that led to his termination was inappropriate. *See id.* at 8-11, 14-24. He contends his firing was the result of racial discrimination and retaliatory motive. *See id.* at 24-29. Plaintiff brings against Defendant Minter: a claim for retaliation for engaging in constitutionally protected speech under 42 U.S.C. §§ 1983 and 1985; a claim for the deprivation of his property interest in continued employment under § 1983; and a claim for violation of his right to equal protection under §§ 1983 and 1985. *See id.* at 25-28. Against Defendant The Mayor and Alderman of the City of Savannah ("City of Savannah"), Plaintiff brings: a claim for retaliation for engaging in constitutionally protected speech under § 1983; a claim for the deprivation of his property interest in continued employment; a § 1983 claim for the deprivation of his procedural due process rights; and a *Monell* claim for policies, practices, protocols, customs, usages, or procedures that led to the deprivation of his right to equal protection. *See id.* at 24-29. Defendants have filed separate Motions for Summary Judgment, which are pending before the district judge. *See generally* docs. 95 & 97.

2

## II.  LEGAL STANDARD

Federal Rule of Evidence 702 requires the Court to perform a "gatekeeping" function concerning the admissibility of expert evidence. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 n.7, 597 (1993)). In performing this task, the Court must consider whether the party offering the evidence has shown:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F.3d at 1260 (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir.1998)).  The proponent of the expert opinion bears the burden of establishing qualification, reliability, and helpfulness by a preponderance of the evidence.  *Daubert*, 509 U.S. at 592, 592 n.10.

Under the first prong, "experts may be qualified in various ways. While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status."

*Frazier*, 387 F.3d at 1260-61; *see also* Fed. R. Evid. 702 (a witness may be qualified as an expert by "knowledge, skill, experience, training, or education[.]"). But, "[w]hen an expert witness relies mainly on experience to show he is qualified to testify, 'the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *Payne v. C.R. Bard, Inc.*, 606 F. App'x 940, 942-43 (11th Cir. 2015) (quoting *Frazier*, 387 F.3d at 1261).

As to the second prong, the reliability "criterion remains a discrete, independent, and important requirement for admissibility." *Frazier*, 387 F.3d at 1261. "The Supreme Court in *Daubert* set out a list of 'general observations' for determining whether expert testimony is sufficiently reliable to be admitted under Rule 702." *United States v. Brown*, 415 F.3d 1257, 1267 (11th Cir. 2005) (citation omitted). These factors, or observations, inquire into the expert's "theory or technique" and are: "(1) whether it can be (and has been) tested; (2) whether it has been subjected to peer review and publication; (3) what its known or potential rate of error is, and whether standards controlling its operation exist; and (4) whether it is generally accepted in the field." *Id.* (citation omitted).

4

"Sometimes the specific *Daubert* factors will aid in determining reliability; sometimes other questions may be more useful." *Frazier*, 387 F.3d at 1262. "Indeed, the Committee Note to the 2000 Amendments of Rule 702 expressly says that, '[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *Id.* at 1261.

Expert testimony must also assist the trier of fact. *Frazier*, 387 F.3d at 1262. "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." *Id.* (citation omitted). This inquiry is commonly called the "helpfulness" inquiry. *Prosper v. Martin*, 989 F.3d 1242, 1249 (11th Cir. 2021) (citing *Frazier*, 387 F.3d at 1260). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* (quoting *Daubert*, 509 U.S. at 591). Additionally, experts "may not testify to the legal implications of conduct" or "tell the jury what result to reach." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990). Such testimony is considered unhelpful because it "in no way

5

assists the trier of fact." *Cooper v. Pacific Life Ins. Co.*, 2007 WL 430730, at *1 (S.D. Ga. Feb. 6, 2007).

### III. ANALYSIS

#### A. Louis M. Dekmar

Plaintiff moves to exclude Defendant Minter's expert, Louis M. Dekmar. Doc. 102. Dekmar is a police chief with 45 years of law enforcement experience, doc. 102-2 at 1, offered by Defendant Minter to opine "as to whether certain actions are consistent with reasonable police practices," doc. 114 at 1. Plaintiff argues that the entirety of Dekmar's testimony will consist of the following types of inadmissible expert testimony: (1) legal conclusions, (2) opinions as to the ultimate issue, and (3) opinions that are more prejudicial than probative. *See* doc. 102 at 7, 9-13. Plaintiff therefore argues all of Dekmar's opinions should be excluded. *Id.* at 13. The Court addresses each of these categories of opinion in turn.

First, Plaintiff is correct that Dekmar may not offer legal conclusions. *See Montgomery*, 898 F.2d at 1541. But "[t]he line between proper expert testimony (facts, inferences to draw therefrom, and the expert's opinion) and improper expert testimony (the actual

6

requirements of the law) is often difficult to draw." *Cooper*, 2007 WL 430730, at *1; *see also Hanson v. Waller*, 888 F.2d 806, 811 (11th Cir. 1989) ("[T]he distinction between whether challenged testimony is either an admissible factual opinion or an inadmissible legal conclusion is not always easy to perceive."). Dekmar "may testify as to the practices normally followed by [police departments] regulated by [. . .] laws, but he cannot purport to instruct the jury on the legal requirements of the statutes and regulations." *Cooper*, 2007 WL 430730, at *2.

For example, Dekmar may not opine that Defendant Minter "included in his disciplinary process the legal requirements of 'due process' as defined by the United States Supreme Court" or testify as to what those requirements are. Doc. 102-2 at 23-24. The Court, not Dekmar, must be the jury's only source of law as to the Due Process Clause's requirements. *See Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1128-29 (11th Cir. 2018). But Dekmar's testimony may touch on the law to the extent "industry custom and practice is shaped by legal requirements, and [Dekmar] does opine [. . .] that the law guides the standards." *Cooper*, 2007 WL 430730, at *2 (internal quotations omitted). His statement that "[a] reasonable and well-trained police chief

7

understands the seriousness of the charges involving Cpl. Kang and the importance of reviewing the evidence supporting those charges based on the 'totality-of-circumstances test, rather than a rigid step-by-step analysis,'" for example, is permissible despite its incorporation of case law. Doc. 102-2 at 32.[1]  He may not testify that a "totality-of-circumstances test" *is* the law, but he may offer an opinion that it is common practice for police departments to use that approach in disciplinary proceedings.

Furthermore, Dekmar may not opine as to what legal authority any City of Savannah practices, policies, ordinances, contracts, codes, forms, or any other instruments bestow upon Defendant Minter as Chief of Police. *See e.g.,* doc. 102-2 at 21-23, 21-23 nn.49-57 (opining as to the effects of the Savannah Police Department Oath of Office and various city ordinances, among other things, on the scope of Defendant Minter's legal authority to change internal policies and discipline police officers). An opinion as to the "legal implications" of a city ordinance, for example, is

---

[1] Dekmar purports to quote *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 733-34 (7th Cir. 2011). *See* doc. 102-2 at 32 n.106. While district courts within the Eleventh Circuit have used the phrase "totality-of-circumstances test, rather than a rigid step-by-step analysis" when discussing *Silverman*, the phrase does not appear in that case. *Compare Silverman*, 637 F.3d 733-34 *with Hendrix v. CIOX Health*, 2019 WL 13273205, at *14 (N.D. Ga. Nov. 12, 2019).

a legal conclusion, and therefore should not be admitted. *See Montgomery*, 898 F.2d at 1541. "While an expert may be able to offer an opinion as to whether one party or another acted in compliance with industry standards, an expert cannot permissibly opine on whether a party had a right to do what it did under *legal* standards." *R & R Intern., Inc. v. Manzen, LLC*, 2010 WL 3605234, at *19 (S.D. Fla. Sept. 12, 2010) (emphasis in original). What legal effect various codes or statutes have on Defendant Minter's authority is a question for the judge. *See United States v. F.E.B. Corp.*, 52 F.4th 916, 932 (11th Cir. 2022) ("[S]tatutory interpretation is a legal question for a judge, not a factual question for the trier of fact."). Dekmar may testify as to what authority police chiefs customarily have or how a reasonable police chief might interpret a specific document in light of generally accepted police practices–but he cannot opine as to the definitive scope of Defendant Minter's legal authority as Chief of Police.

Second, regarding Plaintiff's objection to Dekmar testifying as to ultimate issues, Rule 704(a) of the Federal Rules of Evidence states that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Nevertheless, an expert may not "merely tell the jury what result

9

to reach." *Montgomery*, 898 F.2d at 1541.  Plaintiff argues that Dekmar, in concluding "that Minter's termination of Kang is not the result of racial discrimination or a retaliatory motive," does just that.[2]  Doc. 102 at 11.

The Court agrees.  Opining that "[t]he record contains no evidence of Chief Minter's involvement in any act of discrimination or inference of discriminatory intent or conduct," doc. 102-2 at 27, or that "[t]here is no evidence supporting the proposition that Chief Minter's reasons for terminating Cpl. Kang was retaliatory," *id.* at 29, tells the jury what result to reach on Plaintiff's discrimination and retaliation claims.  *See Montgomery*, 898 F.2d at 1541.  While "[t]he provinces of judge, jury and expert witness are not cartographically immutable and precise," here a line can be drawn.  *United States v. Milton*, 555 F.2d 1198, 1204 (5th Cir. 1977).[3]  It is "within the jury's province to conclude what occurred based on its credibility determinations of fact witnesses as supplemented by

---

[2] The Court notes that Dekmar does not explicitly say in his report "that Minter's termination of Kang is not the result of racial discrimination or a retaliatory motive." *See generally* doc. 102-2.  Similarly, Plaintiff's expert, Gary Vowell, never "opines that Chief Minter treated Officer Gates more leniently than Plaintiff *because of their different races*." *Compare* doc. 113 at 18-19 *with* doc. 101-1 at 6.  The Court cautions the parties–particularly Plaintiff, who is responsible for both foregoing misstatements–to endeavor to more scrupulously describe the opinions in question.
[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

10

[. . .] other evidence." *Jackson v. Catanzariti*, 2019 WL 2098991, at *10 (S.D. Ga. May 14, 2019) (Baker, J.). The jury alone must decide how to consider the evidence presented and determine what it does or does not prove.

Third, Plaintiff's Rule 403 argument fails. Expert testimony that is admissible under Rule 702 nevertheless remains subject to the other Federal Rules of Evidence, such as Rule 403. *See Daubert*, 509 U.S. at 595 ("[A] judge assessing a proffer of expert scientific testimony under Rule 702 should also be mindful of other applicable rules."). Plaintiff suggests that Dekmar's testimony will be prejudicial because "the jury may give undue weight to his determinations based on the fact that he will be presented to the jury as an 'expert.'" Doc. 102 at 12. The Court finds this argument unpersuasive. An otherwise qualified expert may be excluded under Rule 403 where the probative value of his testimony "is substantially outweighed by its potential to confuse or mislead the jury or [. . .] is cumulative or needlessly time consuming." *Frazier*, 387 F.3d at 1263. The Court finds that Dekmar's anticipated testimony, subject to the limitations articulated in this Order, is not likely to confuse or mislead the jury or be cumulative or needlessly time consuming. That

Dekmar will testify as an expert does not in and of itself render his testimony unduly prejudicial.

For the foregoing reasons, Plaintiff's Motion to Exclude Expert Testimony of Louis M. Dekmar is **GRANTED IN PART** and **DENIED IN PART**.  Doc. 102.  Dekmar's legal conclusions and opinions that tell the jury what result to reach are unhelpful.  *See Cooper*, 2007 WL 430730, at *1.  Dekmar is therefore limited in what he may testify to, but he is not subject to wholesale exclusion.  *See* doc. 102 at 13 ("The testimony of Chief Dekmar must be excluded.").  Given the breadth and vagueness of Plaintiff's challenge, *see id.*at 7 (claiming that every opinion in Dekmar's 33-page report "invade[s] the province of the Court and of the jury" and "must be stricken"), the Court will not identify every one of Dekmar's opinions and determine whether it is or is not excluded.  If either party wishes for guidance on the admissibility of one of Dekmar's specific opinions based on this ruling, they may file a motion *in limine* consistent with the governing scheduling order and the District Judge's trial preparation instructions.

### B. Richard Register and Gary Vowell

Defendant Minter moves to preclude Plaintiff's experts, Richard

Register and Gary Vowell, from offering certain opinions regarding Defendant Minter's conduct. Doc. 101. Register and Vowell are both retired law enforcement officials with decades of law enforcement experience. *See generally* doc. 101-1. Defendant Minter challenges Register and Vowell's opinions that Defendant Minter should not have used draft policies during Plaintiff's disciplinary process (Register Opinion 2; Vowell Opinion 7); that Defendant Minter should not have been involved in Plaintiff's disciplinary process (Register Opinion 3; Vowell Opinion 1); that nothing precipitated Plaintiff's firing (Register Opinion 6; Vowell Opinion 4); and that Defendant Minter did not discipline officers uniformly, as shown by Plaintiff's punishment in comparison to Officer Adrian Gates's alleged punishment (Vowell Opinion 6). Doc. 101 at 12; *see also* doc. 101-1 at 5-6, 9-10. He argues that Register and Vowell did not base those opinions on sufficient facts or data and that the opinions are not reliable. Doc. 101 at 6-12. Defendant Minter therefore believes that Register and Vowell should not be allowed to offer those specific opinions at trial. *Id.* at 12.

In drafting his expert report, Vowell reviewed the Complaint, Defendant Minter's Motion to Dismiss, Defendant City of Savannah's

13

Answer, the parties' Rule 26(a) disclosures, information obtained through Freedom of Information Act Requests, and Plaintiff's affidavit. Doc. 101-1 at 4-5. Register reviewed the Complaint, Defendant Minter's Motion to Dismiss, Defendant City of Savannah's Answer, the parties' Rule 26(a) disclosures, and Plaintiff's affidavit. *Id.* at 8-9. Their opinions are "not without a factual basis." *Vincent v. Am. Honda Motor Co., Inc.*, 2010 WL 11537725, at *3 (S.D. Ga. Feb. 4, 2010). While perhaps "not the best evidence," the pleadings, disclosures, and Plaintiff's affidavit provided Vowell and Register "with a factual foundation" for their opinions. *Id.* "[W]here an expert's testimony amounts to no more than a mere guess or speculation, a court should exclude his testimony. [Cit.] But where the expert's testimony has a reasonable factual basis, a court should not exclude it." *United States v. 0.161 Acres of Land, more or less, situated in City of Birmingham, Jefferson Cnty., Ala.*, 837 F.2d 1036, 1040 (11th Cir. 1988) (internal citation omitted).

    The challenged opinions are not based on insufficient facts or data simply because Register and Vowell did not review every available

document before writing their expert reports.[4] Failure to review all available documents affects the possible weight of Register and Vowell's opinions–not their opinions' admissibility. *See, e.g., Quiet Technology DC-8 Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1345-46 (11th Cir. 2003) (holding that an expert's failure to consider "'all available flight test parameters in his model'" went to the accuracy of his analysis and not "the general scientific validity of his methods"); *Vincent*, 2010 WL 11537725, at *3 (holding that an expert's opinion was not without factual basis when he relied solely on plaintiff's lawyer's representation of plaintiff's earnings and not on "tax returns, pay stubs, or employee records" and that "the purported deficiencies in [his] opinion impact the

---

[4] In *Turner v. CMFG Life Insurance Company*, this Court held that an expert could not offer an opinion as to the reasonableness of a contingency fee arrangement when the expert had not "reviewed the contingency fee agreement that is the subject of his opinion." 2023 WL 2587805, at *8 (S.D. Ga. Mar. 21, 2023). Defendant Minter relies on *Turner* in his motion and argues that Register and Vowell "fail[ed] to review the very documents upon which they opine" in regard to the draft policies and the complaints Plaintiff signed or personally filed against Defendant Minter. Doc. 101 at 8. However, this case is distinguishable from *Turner* because Register and Vowell are not offering opinions as to the *contents* of either document. Rather, they are opining, as experts in police practices, as to the procedural appropriateness of using a draft policy in a disciplinary proceeding before the policy has been approved and of a supervisor participating in a disciplinary proceeding when the subject of the proceeding has filed complaints against said supervisor. The opinions are based on the use of *any* draft policy and the *existence* of complaints. *See* doc. 101-1 at 5-6, 9. The actual contents of the draft policy or the complaints against Defendant Minter would seem to have limited bearing on those opinions.

15

weight and sufficiency of his opinion rather than its admissibility"). Failure to consider certain documents may be a flaw in Register and Vowell's respective analyses, but "[t]he identification of such flaws [. . .] is precisely the role of cross-examination." *Quiet Technology DC-8 Inc.*, 326 F.3d at 1345. "[A]s long as a logical basis exists for an expert's opinion and the inadequacies are fully disclosed to the jury, the weaknesses in the underpinnings of the opinion, go to the weight and not the admissibility of that testimony." *Jones v. Otis Elevator Co.*, 861 F.2d 655, 663 (11th Cir. 1988). Register and Vowell, in reviewing the pleadings, disclosures, and Plaintiff's affidavit, had a factual basis for their analysis. *See* doc. 101-1 at 4-5, 8-9. Defendant Minter "will have ample opportunity expose any weaknesses in [Register and Vowell's] opinion[s] and testimony" at trial. *Vincent*, 2010 WL 11537725, at *3. Accordingly, Plaintiff has satisfied his burden to show that Register and Vowell's opinions are based on sufficient facts and data and are reliable in that regard.

As for Defendant Minter's argument that the challenged opinions are not reliable because Register and Vowell "fail[ed] to identify any guideline, standard, or point of reference upon which they base their

16

opinions," doc. 101 at 9, Register and Vowell both stated in their reports and at their depositions that they based their opinions on their years of law enforcement experience in Georgia, emphasizing their time spent in supervisory roles. *See* doc. 101-1 at 5, 9; doc. 101-2 at 5 (Vowell Dep.); doc. 101-3 at 3 (Register Dep.). When an expert bases his opinions on his experience, he must "explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion[s], and how that experience is reliably applied to the facts." *Frazier*, 387 F.3d at 1261 (internal quotations and citations omitted). There is no requirement that the police practices experts in this case must "point to any scientific or empirical data" or explicitly "cite to a recognized policing guideline" for their opinions to be reliable. Doc. 101 at 10. Register and Vowell reached their opinions "[b]ased on [their] education, research, experience and review of the documents provided." Doc. 101-1 at 5, 9. "There is nothing inherently unreliable about this methodology." *Bussey-Morice v. Kennedy*, 2012 WL 7992419, at *3 (M.D. Fla. Dec. 28, 2012) (declining to exclude a police practices expert on reliability grounds when the expert "use[d] his experience in police practices and procedure [. . .] and evaluate[d] the facts in this case to form his opinions."). Again, any

perceived flaws in Register and Vowell's methodology may be addressed on cross-examination. *Quiet Technology DC-8 Inc.*, 326 F.3d at 1345.

For the foregoing reasons, Defendant Minter's Motion *in Limine* to Preclude Certain Opinions of Plaintiff's Experts, doc. 101, is **DENIED**. Register and Vowell may offer the challenged opinions.

## IV. CONCLUSION

Plaintiff's Motion to Exclude Expert Testimony of Louis M. Dekmar is **GRANTED IN PART** and **DENIED IN PART**. Doc. 102. Dekmar may not offer legal conclusions or tell the jury what result to reach. Defendant Minter's Motion *in Limine* to Preclude Certain Opinions of Plaintiff's Experts is **DENIED**. Doc. 101. As discussed above, the parties may seek further clarification on the impact of this Order on specific pieces of anticipated testimony through additional motions *in limine*. As dictated in prior scheduling orders, motions *in limine* shall be filed no later than five days prior to the pre-trial conference. *See e.g.*, doc. 69.

**SO ORDERED**, this 12th day of January, 2024.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA